UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CARLA CASTILLO LINN,<br><br>  Plaintiff,<br><br>   v.<br><br>JO-ANN STORES, LLC,<br><br>  Defendant. | C23-1035 TSZ<br><br>ORDER |

THIS MATTER comes before the Court on Defendant Jo-Ann Stores, LLC's motion to exclude testimony of Theodore Becker, docket no. 37, and Plaintiff Carla Castillo Linn's motion to exclude rebuttal witnesses, docket no. 47. Having reviewed all papers filed in support of, and in opposition to, the motions, the Court enters the following Order.

**Background**

On June 27, 2020, Plaintiff went shopping at Defendant's fabric store at Crossroads Mall in Bellevue, Washington ("Store No. 2067"). Pl.'s Dep. at 89:1–90:13, Ex. B to First Decl. (docket no. 28-2). Plaintiff slipped and fell while walking on the

ORDER - 1

floor of Store No. 2067, and the incident was captured on a surveillance video. Plaintiff brings this negligence action for damages arising from her fall. Compl. (docket no. 1-1).

In support of her claim, Plaintiff offers the expert opinion of Dr. Theodore Becker. Dr. Becker holds a Ph.D. in Human Performance and is a licensed physical therapist.[1] Ex. C to Balint Decl. (docket no. 63-1 at 96). Dr. Becker states that he can determine the precise moment Plaintiff's left knee contacted the ground and opines that Plaintiff's fall at Store No. 2067 caused her hip injury. Becker Rep., Ex. A to Balint Decl. (docket no. 63-1 at 15–16). Plaintiff contends that Dr. Becker's opinions are "supported not only by the video itself, (independent of frame rate) but [also] by the medical records documenting the blow to the left knee." Pl.'s Resp. at 8 (docket no. 62).

Defendant moves to exclude the testimony of Dr. Becker, arguing that his causation opinion is based on his subjective and unscientific review of the surveillance video of Plaintiff's fall. Def.'s Mot. at 1–2 (docket no. 37). Plaintiff moves to exclude rebuttal witnesses Braydon Bourne, Amanda Stone, and Erin Harley. Pl.'s Mot. at 1 (docket no. 47).

**Discussion**

**A.    Testimony by Expert Witnesses**

Federal Rule of Evidence ("FRE") 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the

---

[1] Dr. Becker is qualified as an expert in the fields of Human Anatomy, Human Performance, and Biomechanical Analysis.

ORDER - 2

1  form of an opinion if" (i) "the expert's scientific, technical, or other specialized
2  knowledge will help the trier of fact to understand the evidence or to determine a fact in
3  issue," (ii) "the testimony is based on sufficient facts or data," (iii) "the testimony is the
4  product of reliable principles and methods," and (iv) "the expert has reliably applied the
5  principles and methods to the facts of the case." Fed. R. Evid. 702(a)–(d).  The FREs
6  "assign to the trial judge the task of ensuring that an expert's testimony both rests on a
7  reliable foundation and is relevant to the task at hand." Daubert v. Merrell Dow. Pharm.,
8  Inc., 509 U.S. 579, 597 (1993).  To be relevant, there must be "a valid scientific
9  connection to the pertinent inquiry as a precondition to admissibility." Id. at 591–92.
10      The test to determine reliability of expert testimony is flexible. Id. at 594.  Courts
11  may consider certain factors including, but not limited to, testing, peer review, error rates,
12  and acceptability in the relevant scientific community. Id. at 593–94.  Nonetheless,
13  "[c]hallenges that go to the weight of the evidence are within the province of a fact
14  finder, not a trial court judge." City of Pomona v. SQM N. Am. Corp., 750 F.3d 1036,
15  1044 (9th Cir. 2014).
16  **B.    <u>Defendant's Motion to Exclude Dr. Becker</u>**
17      Defendant moves to exclude Dr. Becker's causation opinion, arguing that his
18  "opinions satisfy none of the requirements listed in Daubert." Def.'s Mot. at 6 (docket
19  no. 37).  Defendant contends that Dr. Becker's causation opinion is not reliable because it
20  is based on his assertion that he can determine the "precise" moment Plaintiff's left knee
21  contacted the ground from the surveillance video of Plaintiff's fall even though Dr.
22  Becker is not an expert in analyzing surveillance videos. Def.'s Mot. at 2 & 7–16 (docket
23

ORDER - 3

1   no. 37). Dr. Becker asserts that "photograph 20A" in his report captures the moment that
2   Plaintiff's left knee contacted the ground. Becker Dep. 77:13–78:5, Ex. A to First Decl.
3   (docket no. 38-1 at 19–20). Whether Plaintiff's knee is contacting the ground in
4   photograph 20A is a question for the trier of fact.

5   Dr. Becker's causation opinion is based on his review of the surveillance video of
6   Plaintiff's fall. Becker Rep., Ex. B to First Decl. (docket no. 38-2 at 5). To examine the
7   video, Dr. Becker used Sony Studio 64 software, which "anybody can purchase" and
8   which allowed him to look at the video frame by frame. Becker Dep. at 41:13–42:13, Ex.
9   G to Balint Decl. (docket no. 63-1 at 152–53). Dr. Becker's causation opinion is based
10  solely on his opinion as to when Plaintiff's knee contacted the ground and he opines that
11  such impact caused Plaintiff's hip injury.[2] Becker Rep., Ex. A to Balint Decl. (docket no.
12  63-1 at 37).

13  Dr. Becker attempts to replicate and illustrate Plaintiff's fall based on his review
14  of the surveillance video using a Lab Simulation and an Anatomical Simulation.[3] The
15  Lab Simulation uses a "volunteer simulator secured in harness and suspended by ropes"
16  to demonstrate how Plaintiff fell based on Dr. Becker's review of the surveillance video.
17  Becker Rep., Ex. B to First Decl. (docket no. 38-2 at 21–47). Dr. Becker's Lab

---

[2] In his declaration, Dr. Becker maintains that his opinion is corroborated by Plaintiff's medical records, which document "the blow to her left knee." Becker Decl. at 5 (docket no. 64). Plaintiff, however, does not offer Dr. Becker as a medical expert, and the Court will not allow his testimony based on medical records.

[3] Dr. Becker testified that "you cannot see every anatomical component of the upper extremity" in the surveillance video of Plaintiff's fall. Becker Dep. at 50:19–51:6, Ex. A to First Decl. (docket no. 38-1 at 11–12).

ORDER - 4

1 Simulation, however, places the volunteer simulator in positions not seen in the

2 surveillance video, such as the volunteer simulator's hand position while falling.  Id.

3 When asked if he could identify a frame in the surveillance video when Plaintiff's hands

4 contacted the ground, Dr. Becker testified that he could not do so because "there's only

5 one image" and "it's not like there were multiple cameras being used[.]"  Becker Dep. at

6 51:18-25, Ex. G to Balint Decl. (docket no. 63-1 at 154).  Dr. Becker's simulation of

7 Plaintiff's body position as she fell is not reliable because Dr. Becker admits that the Lab

8 Simulation shows the volunteer simulator in positions not captured in the surveillance

9 video of Plaintiff's fall.[4]  Similarly, the Anatomical Simulation, which is a skeletal model

10 that purports to mimic Plaintiff's fall as shown in the surveillance video and Lab

11 Simulation, see Becker Rep. at 49, Ex. B to First Decl. (docket no. 38-2 at 50), is not

12 reliable because it is based on Dr. Becker's assertion that he can determine Plaintiff's

13 body position in moments not captured by the surveillance video.

14     As to the Force Calculations, Dr. Becker explains that the surveillance video

15 shows that force was applied to Plaintiff's left knee, and that his calculations are merely

16 "illustrative to show how to calculate the amount of force" even though he does not

17 calculate how much force was actually applied to Plaintiff's left knee in this case.[5]

18 Becker Decl. at 3–7 (docket no. 64).  In other words, Dr. Becker essentially seeks to

---

[4] Dr. Becker does not explain how he knows the position of Plaintiff's hands while she was falling even though Plaintiff's hands cannot be seen in the surveillance video when she is falling.

[5] Dr. Becker testified that his force calculations are "for demonstrative purposes" and "that there are variables here that we can't totally account for."  Becker Dep. at 133:3–134:13, Ex. A to First Decl. (docket no. 38-1 at 30–31).

testify that, based on his review of the surveillance video, an amount of force was applied to Plaintiff's left knee when she fell.  Because Dr. Becker does not calculate how much force was applied to Plaintiff's left knee when she fell, Dr. Becker's force calculations will not be helpful to the jury, which will have an opportunity to view the surveillance video and make the determination of how Plaintiff fell and what force was applied to Plaintiff's left knee.

In sum, Dr. Becker's causation opinion is based on his review of the surveillance video and his assertion that he can determine the exact moment Plaintiff contacted the ground.  Dr. Becker, however, is not an expert in analyzing surveillance videos.  Becker Decl. at 2–3 (docket no. 64).  Dr. Becker did not use specialized software to view the surveillance video as he used software that "anybody can purchase."  Becker Dep. at 41:13–42:13, Ex. G to Balint Decl. (docket no. 63-1 at 152–53).  Dr. Becker does not explain how his review of the surveillance video allows him to determine Plaintiff's body position in moments not captured in the surveillance video.  Dr. Becker will not be permitted to testify about what he observed from watching the surveillance video.  Lee v. Andersen, 616 F.3d 803, 808–09 (8th Cir. 2010) (noting that an expert opinion that "merely tells the jury what result to reach" is not admissible and concluding that the jury did not need an expert opinion to determine whether a person was holding something in his hands from watching a surveillance video); Mitchell v. Royal Caribbean Cruises, Ltd., No. 12-CIV-22734, 2013 WL 8283957, at *1 (S.D. Fla. June 5, 2013) (concluding that experts could not testify as to whether, based on their review of a surveillance video, the plaintiff was holding a handrail because the jury would have an opportunity to watch the

ORDER - 6

video and was equally qualified to make its own determination); Redd v. Abla-Reyes, No. 12-465, 2013 WL 6036697, at *2 (D. Minn. Nov. 14, 2013) (holding that an expert witness could not testify regarding his opinion of what happened on a surveillance video because he had no special expertise in interpreting video images and the ability to discern the images in the video was within the jury's knowledge or experience).  Defendant's motion to exclude Dr. Theodore Becker is GRANTED.

C. **Plaintiff's Motion to Exclude Rebuttal Witnesses**

Plaintiff moves to exclude in part Defendant's rebuttal experts Braydon Bourne, Amanda Stone, and Erin Harley.  Pl.'s Mot. at 1–3 (docket no. 47).  Specifically, Plaintiff seeks to exclude "rebuttal expert Braydon Bourne and those portions of the subsequent reports of Amanda Stone and Erin Harley that rely upon, and/or quote, Mr. Bourne's report."  Pl.'s Reply at 1 (docket no. 72).  Because Defendant offers Braydon Bourne as a rebuttal expert to Dr. Becker's and Dr. Wicks' assertion that they could visually discern from the surveillance video "all of plaintiff's body angles at the precise moment when plaintiff's left knee contacted the ground," see Def.'s Resp. at 12 (docket no. 57), and neither witness will be permitted to testify as such, Mr. Bourne's testimony is not necessary.  Thus, Plaintiff's motion to exclude is GRANTED as to Braydon Bourne.  Dr. Stone and Dr. Harley will not be permitted to testify to the extent they rely on Mr. Bourne's report.  The motion to exclude rebuttal witnesses is otherwise DENIED.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) Defendant's motion to exclude Dr. Becker, docket no. 37, is GRANTED.

ORDER - 7

(2)     Plaintiff's motion to exclude rebuttal witnesses, docket no. 47, is GRANTED as to Braydon Bourne.  Dr. Stone and Dr. Harley will not be permitted to testify to the extent they rely on Mr. Bourne's report.  The motion to exclude rebuttal witnesses is otherwise DENIED.

(3)     The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 28th day of June, 2024.

Thomas S. Zilly
United States District Judge